UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| | § | |
| KIMBERLY A. GARCIA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | No. SA:12-CV-1213-DAE |
| | § | |
| EHEALTHSCREENINGS, L.L.C., | § | |
| JASON MORGESE, and ANASTASIA | § | |
| TROXEL, | § | |
| | § | |
| Defendants. | § | |

ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL
SUMMARY JUDGMENT AND REFERRING CASE TO MAGISTRATE
JUDGE FOR SETTING OF A TRIAL DATE

On January 30, 2014, the Court heard argument on Defendants'

Motion for Partial Summary Judgment (Dkt. # 20).  Glen Levy, Esq., appeared on

behalf of Plaintiff, and Robert Kilgore, Esq., represented Defendants.  After careful

consideration of the arguments presented at the hearing and the memoranda in

support of and in opposition to the pending motions, the Court, for the reasons that

follow, **GRANTS** Defendants' Motion for Partial Summary Judgment.

BACKGROUND

Plaintiff Kimberly A. Garcia ("Plaintiff") brought this suit against

EHealthScreenings, L.L.C., Jason Morgese, and Anastasia Troxel (collectively,

"Defendants") alleging they violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, et seq.

Defendant EHealthScreenings, L.L.C. provides comprehensive wellness screening services specializing in off-site biometric data collection and transfer for their clients.  (Dkt. # 1 ¶ 2, "Compl.".)  Defendant Jason Morgese is the President of EHealthScreenings, and Defendant Anastasia Troxel is the Vice President of EHealthscreenings.  (Id. ¶¶ 3, 4.)  On April 25, 2012, Defendants hired Plaintiff.  (See id. ¶ 14.)  Plaintiff alleges that during the week of June 15, 2012, she had already worked more than fifty-five hours.  (See id. ¶ 17.)  Plaintiff approached her manager and stated that she would only work additional hours that week if she were guaranteed overtime compensation.  (See id.)  The manager informed Plaintiff that she would not receive overtime compensation, and Plaintiff protested.  (See id.)

On June 18, 2012, Plaintiff met with Defendant Troxel who offered Plaintiff a position as a salaried employee[1] with a gross annual salary of $32,000.  (See id. ¶ 18.)  Plaintiff believed that, based on the number of hours she worked and the legal rate of overtime compensation, it was more prudent for her to remain as an hourly employee.  (See id.)  Plaintiff countered Defendant Troxel's offer with a request for $36,000 in gross annual salary and more managerial authority.  (See

---

[1] Plaintiff asserts the position was a non-exempt position under the FLSA. (Dkt. # 1.)

id.)  Plaintiff alleges the Defendants were visibly hostile to her request.  (See id.)
Later that day, Defendant Troxel informed Plaintiff that Defendant Morgese
decided to continue her employment as an hourly employee.  (See id.)  Plaintiff
alleges that from this point on, she suffered retaliation because she had broached
the subject of her legal entitlement to overtime.  (See id.)

Plaintiff alleges that Defendants retaliated by placing her under
constant supervision, singling her out because of trivial issues, singling her out for
her time management practices, and subjecting her to weekly discussions regarding
her time management skills, her time card entries, and her food and lunch breaks.
(See id.)

Specifically, Plaintiff points to four instances of retaliation.  (See id.)
First, Plaintiff alleges that after the June 18, 2012 meeting, she was singled out and
asked to provide her manager with a copy of every email she sent.  (See id. ¶ 21.)
Second, Plaintiff alleges that in October 2012, she was specifically instructed not
to stay an additional fifteen minutes on a day she had already worked eight and a
half hours because Defendants would not pay the additional .25 hours of overtime.
(See id. ¶ 24.)  Third, Plaintiff contends that on or around November 14, 2012, she
requested two days off in an upcoming week, but Defendants informed her that she
did not have enough hours of paid time off to take those days off.  (See id. ¶ 25.)
Plaintiff alleges that the only reason it did not show she had sufficient paid time off

was because Defendants had engaged in improper accounting of her paid time off and overtime.  (See id.)  Finally, Plaintiff alleges that she received a write up for leaving at 3:30 p.m. on November 21, 2012, even though she had been told it was to be a half-day.  (See id. ¶ 26.)

According to Plaintiff, she was told that she was "too sensitive" or "too emotional" when she protested this treatment.  (See id. ¶ 19.)  Plaintiff claims that other employees who continued to work overtime without proper compensation and without complaint were rewarded with praise, promotions, or both.  (See id. ¶ 20.)

On December 3, 2012, Plaintiff wrote an email to Defendant Morgese regarding her treatment since she inquired about overtime pay.  (See id. ¶ 27.)  Plaintiff stated that the treatment she principally was complaining about was "Ms. Troxel's and Ms. Shipp's treatment of [her] the week prior.  Mr. Morgese and Mr. Dohrmann were out of the office.  And things had severely escalated that week." (Dkt. # 22 Ex. B. 82:15–18.)  Plaintiff states that she sent the December 3, 2012 email in the hopes that Defendant Morgese "would be able to use this as an opportunity for counseling my department, how we could work together and maintain myself as an employee with the company."  (Id. at 100:18–21.)

That same day, Plaintiff met with Defendant Morgese, Defendant Troxel, Mr. Dorhman, and Ms. Shipp to discuss Plaintiff's complaints and the

4

written warnings Plaintiff had received.  (Id. at 97:23–25.)  At the end of that

meeting, Plaintiff stated that "[Defendant Morgese] told all of us in the room that it

was obvious the relationship with myself and the company was one that was not

working.  And [Defendant Morgese] said that he saw it one of two ways, that either

I could resign from the company with two weeks' pay or I would be terminated.[2]"

(Id. at 98:5–10.)  Plaintiff resigned with two weeks' pay.

On December 24, 2012, Plaintiff filed the instant lawsuit alleging

first, that Defendants violated the FLSA overtime compensation requirements, and

second, that Defendants engaged in retaliatory practices in violation of the FLSA.

(Compl. at 1.)  Defendants moved for Partial Summary Judgment on September

16, 2013.  (Dkt. # 20.)

## LEGAL STANDARD

Summary judgment is proper when "there is no genuine dispute as to

any material fact and the movant is entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56(a).  The movant bears the initial burden of showing there is an

absence of any genuine issue of material fact for trial.  Celotex Corp. v. Catrett,

477 U.S. 317, 322 (1986).  The burden then shifts to the non-moving party "to go

beyond the pleadings and by [his or her] own affidavits, or by the depositions,

answers to interrogatories, and admissions on file, designate specific facts showing

---

[2] Additionally, Mr. Morgese, at some point, offered Plaintiff a bonus of a thousand
dollars.  (Dkt. # 22 Ex. B. 108:16–20.)

that there is a genuine issue for trial.  <u>Id.</u> at 324 (internal quotation marks omitted).

The non-moving party "must, either by opposing evidentiary documents or by

referring to evidentiary documents already in the record, set out specific facts

showing a genuine issue as to a material fact exists."  <u>Leghart v. Hauk</u>, 25 F. Supp.

2d 748, 751 (W.D. Tex. 1998).  "[Non-movants] are required to identify the

specific evidence in the record and to articulate the precise manner in which that

evidence supports their claim."  <u>Id.</u>  Further, "Rule 56 does not require the district

court to sift through the record in search of evidence to support a [non-movant's]

opposition to summary judgment.  <u>Id.</u>

   In evaluating whether summary judgment is proper, the Court

examines the facts in the light most favorable to the non-moving party.  <u>Lemelle v.</u>

<u>Universal Mfg. Corp.</u>, 18 F.3d 1268, 1272 (5th Cir. 1994).  The Court "examines

the pleadings, affidavits, and other evidence introduced in the motion, resolves any

factual doubts in favor of the non-movant, and determines whether a triable issue

of fact exists."  <u>Leghart</u>, 25 F.Supp. 2d at 751.

<u>DISCUSSION</u>

I. <u>Overtime Claims</u>

   Plaintiff alleged Defendants violated the FLSA's overtime provisions,

29 U.S.C. §§ 206(1)(c), 207(a)(1), and 207(e), by failing to properly compensate

Plaintiff for time she worked in excess of the standard workweek.  (Dkt. # 1 ¶¶ 28–

6

36.)  However, Defendants argue, and Plaintiff concedes in her Response, that

based on Plaintiff's admissions during her deposition, Plaintiff can no longer

maintain a claim for violation of the FLSA overtime compensation requirements.

(See Dkt. ## 20, 22.)

   Based upon the representations during oral argument, and Plaintiff's

counsel's statements, the Court approves the oral stipulation by the parties

dismissing Plaintiff's claim for violations of the FLSA's overtime provisions.

## II. Retaliation Claims

   Defendants argue that the Court should grant partial summary

judgment because Plaintiff admitted that Defendant Morgese did not retaliate

against her in violation of the FLSA[3].  (Dkt. # 20.)  Defendants argue that

Plaintiff's own admissions during her deposition testimony require the Court to

grant summary judgment on this claim.  (Dkt. # 20.)  During Plaintiff's deposition,

she stated, in response to a series of questions concerning her resignation and

subsequent communications with Defendant Morgese:

  Q. And [Defendant Morgese] also says that 'Sometimes things
    don't  work out as planned, but we appreciate the time you did
    spend here. Good luck wherever your future endeavors take
    you,' right?

---

[3] The FLSA contains an anti-retaliation provision that states "it shall be unlawful
for any person . . . to discharge or in any other manner discriminate against any
employee because such employee has filed any complaint or instituted or caused to
be instituted any proceeding under or related to this chapter . . . ."  29 U.S.C.
§ 215(a)(3).

A.    That's correct.
Q.    Doesn't sound like somebody who is retaliating against you, does it?
A.    I never thought that Mr. Morgese was retaliating against me.

(Dkt. # 22 Ex. B. 109:15–23.)  Defendants argue that this admission precludes Plaintiff from pursuing any claims for retaliation against Defendant Morgese.

   In contrast, Plaintiff argues that her admission only demonstrates that she did not think Defendant Morgese retaliated against her after she was terminated, and she supports this contention with an affidavit attached to her Response.  (Dkt. # 22 ¶ 1.)

   The issue before the Court is whether Plaintiff's admission in a sworn deposition is a judicial admission, which is binding, or an evidentiary admission, which she may later attempt to contradict or explain.  See Martinez v. Bally's La., Inc., 244 F.3d 474, 476–77 (5th Cir. 2001).

   "A judicial admission is a formal concession in the pleadings or stipulations by a party or counsel that is binding on the party making them. . . . [I]t has the effect of withdrawing a fact from contention."  Id.  In contrast, an evidentiary admission is "merely a statement or assertion or concession made for some independent purpose."  Id. (quoting McNamara v. Miller, 269 F.2d 511, 515 D.C. Cir. 1959)).  A plaintiff's statement during a deposition regarding the basis for his or her claims constitutes a judicial admission unless it is made for a purpose other than "releasing the opponent from proof of fact."  See Johnson v. Idexx

8

Labs., Inc., No. 3:06-CV-381-M, 2007 WL 1650416, at *1 (N.D. Tex. June 4, 2007).

        In Martinez, the plaintiff sued under the Jones Act for emotional injuries resulting from her supervisor's behavior.  Martinez, 244 F.3d at 475.  All parties agreed that the plaintiff was never physically touched.  Id.  Plaintiff's counsel stated, during a deposition, that the plaintiff "was not making any kind of physical injury claims" and "[the plaintiff] was waiving any physical injury claims."  Id. at 475.  Later, the plaintiff's counsel attempted to explain these statements arguing that he interpreted physical injury to mean only injuries arising from physical contact, and that he did not mean to waive claims for physical injury brought about by emotional injuries.  Id. at 476.  The plaintiff then submitted an affidavit arguing that her claims were for physical injuries arising from sexual harassment.  Id. at 476–77.  The Martinez defendants moved for summary judgment based on the plaintiff's counsel's admission.  Id. at 475.  The district court granted summary judgment to the Martinez defendants, and the plaintiff appealed.  Id. at 476.

        On appeal, the plaintiff claimed her affidavit explaining the admission was sufficient to defeat the motion for summary judgment.  Id.  The Fifth Circuit found that the plaintiff's counsel's statement constituted a judicial admission because "counsel's statements were intended to relieve Bally's from discovery of

9

facts related to physical injury and were not merely asserted for an independent purpose." Id. at 477. Because the statement was a judicial admission, the plaintiff was properly precluded from contradicting the testimony by affidavit, and the Fifth Circuit upheld the grant of summary judgment. Id.

Similarly, in Johnson, the plaintiff filed a complaint alleging discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981. Johnson, 2007 WL 1650416, at *1. During the plaintiff's deposition, he was asked, "Are there any other reasons you believe you were terminated, other than the fact that you made this complaint to OSHA?" Id. He responded, "No. I-I know that-it was all about the hood and safety issue and letting OSHA know about it and standing up against it for being unsafe. That's why I got fired. I have no doubt, 100 percent, that's it." Id.

The court granted the defendant's motion for summary judgment finding Plaintiff's testimony constituted a judicial admission because "[t]he admission [was] clear, unambiguous, and intentional, and [Plaintiff] has made no attempt to seek leave of the Court to withdraw it." Id. The court held that this was not an evidentiary admission because it "was not made for a purpose independent of conclusively admitting that the only reason for his termination was his complaint to OSHA." Id. at *2.

Here, Plaintiff has admitted during her deposition that she "never thought Defendant Morgese was retaliating" against her.  (Dkt. # 22 Ex. B. 109:15–23.)  Plaintiff's statement was provided in response to a question relating to an email conversation between Plaintiff and Defendant Morgese in which Plaintiff tendered her resignation.  (Id.)  Plaintiff's statement was clearly made in the context of discussing the events leading up to and precipitating her resignation. Like in Martinez and Johnson, this Court finds that Plaintiff's testimony constitutes a binding judicial admission.  As such, Plaintiff's statement acts as a concession that she does not claim that Defendant Morgese retaliated against her, and the Court relies on this statement in its adjudication of the pending motion for partial summary judgment.

First, Plaintiff's statement was clear, unambiguous, and intentional[4]. In response to a question asking about what she thought of Defendant Morgese's actions, she clearly stated that she never thought he retaliated against her. (Dkt. # 22 Ex. B. 109:15–23.)  There is nothing ambiguous about this statement, and there is nothing in the statement itself, or the rest of Plaintiff's deposition

---

[4] Plaintiff subsequently filed an affidavit stating that her admission during her deposition only meant that "Mr. Morgese was not retaliating after I was fired." (Dkt. # 22 Ex. C ¶ 2.)  Because Plaintiff's admission constitutes a judicial admission, it cannot be contradicted by a later affidavit.  Martinez, 244 F.3d at 477. However, even if the Court were to consider the affidavit, Plaintiff's contention is in clear contrast to the plain meaning of the words used in her deposition testimony.

testimony, that would suggest she was only referring to Defendant Morgese's behavior after she was terminated.  Plaintiff submitted the entire one-hundred-and-forty-two page deposition transcript in support of her Response; however, Plaintiff failed to indicate which statements, if any, in the deposition supported her claim or contradicted her admission.  After wading through the entire transcript, the Court did not find any statements that would negate Plaintiff's admission or create a genuine issue of material fact.  Second, Plaintiff has not provided any independent purpose explaining why Plaintiff made this statement.  And finally, Plaintiff's statement was made intentionally and in the context of discussing her overall relationship with Defendant Morgese.  Because Plaintiff's admission is a judicial admission, Plaintiff may not introduce testimony by affidavit to contradict it. Martinez, 244 F.3d at 476–77.

There is no genuine issue of material fact as to whether Defendant Morgese retaliated against her – Plaintiff's admission conclusively establishes that he did not. Plaintiff's admission forecloses her claims against Defendant Morgese and mandates a grant of summary judgment in favor of Defendants on the claim of retaliation by Defendant Morgese.

<u>CONCLUSION</u>

For the reasons stated above, the Court **GRANTS** Defendants'

Motion for Partial Summary Judgment (Dkt. # 20).  Additionally, the Court hereby

**REFERS** this case to Magistrate Primomo for the setting of a trial date.

IT IS SO ORDERED.

DATED:  San Antonio, Texas, February 7, 2014.

_____

David Alan Ezra
Senior United States Distict Judge